IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ETHEL MCCLINTOCK, Individually and as Executrix of the Estate of Ronald McClintock, Plaintiff. | § § § § | |
| v. | § § | CIVIL ACTION NO. 4:10-CV-745-Y |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, Defendant. | § § § § § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Ethel McClintock ("Plaintiff"), suing individually as well as in her capacity as executrix of the estate of her deceased husband, Ronald McClintock ("Claimant") filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Claimant's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). Claimant filed his application for DIB on April 7, 2008, alleging a disability onset date of October 1, 2007. (Transcript ("Tr.") 117.) His application was denied initially and on

1

reconsideration. (Tr. 80, 86.) He sought review from an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ James Wendland on February 5, 2009. (Tr. 33-77.) On April 27, 2009, the ALJ issued an unfavorable opinion finding that Claimant was not disabled. (Tr. 18-32.) Claimant filed a written request for review, but the Appeals Council denied his request, and the ALJ's decision became the final decision of the Commissioner. (Tr. 11.) On February 22, 2010, while his case was under the jurisdiction of the Appeals Council, Claimant died from "metastatic adenocarcinoma of the ampulla/pancreas." (Tr. 9.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions govern disability insurance benefits. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be

found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

## III. ISSUES

Plaintiff raises the following issues:

1. Whether the ALJ erred in his determination of Claimant's residual functional capacity; and

2. Whether the ALJ erred in his step four determination that Claimant was capable of performing his past relevant work.

(Plaintiff's Brief ("Pl. Br.") at 2.)

## IV. ADMINISTRATIVE RECORD AND ALJ DECISION

### A. <u>Administrative Hearing</u>

At his February 5, 2009 hearing before the ALJ, Claimant was represented by an attorney. (Tr. 33-77.) Claimant testified on his own behalf, and a medical expert ("ME"), Dr. Ralston, and a vocational expert ("VE"), Carol Bennett, also testified. (*Id.*) The VE testified that Claimant's past relevant work was as a manufacturing engineer, classified as light work, with a specific vocational preparation ("SVP")[1] level of 8. (Tr. 36.) She also stated that Claimant had past relevant work experience as a truck driver, a medium, semi-skilled job with an SVP level of 4.

After hearing from Claimant as well as the ME, the ALJ asked the VE whether Claimant had obtained any transferable skills from his past relevant work, and she answered that he had. (Tr. 63.) The ALJ gave the VE the following hypothetical:

---

[1] The SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See Dictionary of Occupational Titles* ("DOT") app. C (rev. 4th ed.1991). Unskilled work usually requires less than thirty days of training, which corresponds to an SVP level of 1 or 2; semi-skilled work corresponds to an SVP level of 3 or 4; and skilled work requires an SVP level of 5 or higher. Social Security Ruling ("SSR") 00-4p; *see also* 20 C.F.R. §§ 404.1568, 416.968.

4

> A person is 60 years of age, high school level education, same past work experience as the Claimant, and ability to do light work with the following specific restrictions and requirements. Not required to stoop, crouch, crawl, kneel, or climb stairs and ramps more than occasionally. Not required to climb scaffolds, ladders, and ropes. Not required to sit for more than 30 minutes at one time without the opportunity to stand in addition to the lunch and normal legal breaks during the workday. Not required to stand, walk for more than four hours out of an eight-hour workday. Not required to work above shoulder level with the upper extremities. Not required to push or pull with the feet, not required to work at unguarded heights or near unguarded hazardous mechanical equipment. Not required to work with or near vibrating equipment. Could this hypothetical person perform any of the Claimant's past relevant work as generally done in the national economy or as actually done by the Claimant?

(Tr. 64.) The VE responded that the hypothetical person would not be precluded from performing work as a manufacturing engineer. (*Id.*) She also said that the same hypothetical person had transferable skills which would allow him to perform the jobs of engineering lab technician, classified as light and skilled with an SVP of 7, with 50,000 such jobs in the United States. (Tr. at 66.) She specifically identified Claimant's transferrable skills applicable to that job as "primarily specialized knowledge relating to parts manufacturer in the aerospace testing, calibrating, reading the blueprints and schematics," and some problem solving and trouble shooting. (*Id.*)

The ALJ then told the VE he was going to give her a second hypothetical which was the same as the first except that it would be sedentary instead of light, changing the lifting requirements and the stand/walk requirements. (Tr. 67.) The ALJ acknowledged that the second hypothetical person could not perform Claimant's past relevant work as a manufacturing engineer because that job is classified as light. (*Id.*) When asked whether she could identify jobs in the national economy that the second hypothetical person could perform, the VE identified the job of tool planner, which could be light or sedentary, depending on the job, skilled, with an SVP

5

of 8, with at least 35,000 such jobs in the United States. (*Id.*) She testified that Claimant had transferable skills that would be used in the tool planner job, including specialized knowledge of tools and manufacturing processes and blueprints, reading and analyzing blueprints to determine the kinds of tools needed, and principles of math and science. (Tr. 67-68.) The ALJ also confirmed that the tools and industries of the proposed tool planner job would be the same as with Claimant's past relevant work. (Tr. 68.) Then the ALJ asked the VE whether any of the testimony she gave conflicted with the information in the *DOT*, and she said that it did not. (Tr. 68-69.)

B. **The ALJ's Decision**

In making his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 21-32.) At step one, the ALJ found that Claimant had acquired sufficient quarters of coverage to remain insured through June 30, 2012. (Tr. 23-28.) He also found that Claimant had not engaged in substantial gainful activity from October 1, 2007 through the date of his hearing before the ALJ. (Tr. 23, citing 20 C.F.R. § 404.1571 *et seq.*)

At step two, the ALJ determined that Claimant had the severe impairments of degenerative disc disease of the thoracic and lumbar spine, obesity, and depression. (*Id.*, citing 20 C.F.R. § 404.1520(c)). The ALJ then found that Claimant did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (*Id.*, citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. § 404.1525 and 404.1526.) The ALJ noted that in reaching his decision, he considered the effects of Claimant's obesity consistent with the provisions set forth in Social Security Ruling ("SSR") 02-1p.

6

The ALJ formulated Claimant's residual functional capacity ("RFC") as follows:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) where he is not required to: stoop, crouch, crawl, kneel, or climb stairs and ramps more than occasionally; climb scaffolds, ladders and ropes; sit for more than 30 minutes at one time without the opportunity to stand in addition to a lunch and the normal legal breaks during the workday; stand/walk for more than 4 hours outs [sic] of an 8-hour workday; work above shoulder level with the upper extremities; push or pull with the feet; work at unguarded heights or near unguarded hazardous mechanical equipment; or work with or near vibrating equipment.

(Tr. 28.)

At step four, the ALJ found that Claimant was able to perform his past relevant work as a manufacturing engineer. (Tr. 31, citing 20 C.F.R. § 404.1565.) He explained his determination as follows:

> Mr. McClintock testified that in becoming a manufacturing engineer he started out as an electronic technician. He was promoted to foreman and then to manufacturing engineer. He had 2 years of college where he studied drafting. He learned electronics in the Army.
>
> The vocational expert characterized Mr. McClintock's past relevant work as a manufacturing engineer as light, skilled, and as a truck driver as medium, semi-skilled (SVP-4). The job of manufacturing engineer as performed by the claimant would not be precluded by the claimant's residual functional capacity.
>
> Pursuant to SSR 00-4p, the vocational expert stated her testimony is consistent with information contained in the *Dictionary of Occupational Titles*.

(Tr. 31.) Ultimately, the ALJ concluded that Claimant was not disabled within the meaning of the Act at any time from October 1, 2007 through the date of the ALJ's decision. (*Id.*)

## V. DISCUSSION

### A. Whether the ALJ erred in his determination of Claimant's RFC.

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the RFC would require Claimant to sit and stand throughout a full work day. (Pl. Br. at 2.) As the factfinder, the ALJ "has the sole responsibility for weighing the evidence," and evaluating a claimant's RFC based on the record as a whole. *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990); 20 C.F.R. §§ 404.1546, 416.946. The ALJ is also free to "choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir.1991) (*citing Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987)). Plaintiff argues that the ALJ erred in making his RFC determination in three respects. The Court will consider each of these arguments in turn.

#### 1. Whether the ALJ properly considered the medical opinions of record with regard to Claimant's impairments and their effects on his ability to work.

Plaintiff first argues that the ALJ did not properly consider the entire record, including the opinions of Claimant's treating and examining physicians, with regard to Claimant's impairments and their effects on Claimant's ability to work. (Pl. Br. at 2.) Plaintiff claims, in essence, that the ALJ erred in rejecting the opinion evidence of Kevin R. Teal, M.D. ("Teal") and Lorraine Yeoman, M.D. ("Yeoman") without applying the required factors in 20 C.F.R. § 404.1527(d), and without good cause. *See* 20 C.F.R. § 416.927(d). (Pl. Br. at 2, 12-18.)

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the

8

criteria set forth in 20 C.F.R. § 404.1527(d)." *Newton*, 209 F.3d 448, 453 (5th Cir.2000) (emphasis in original). Under the statutory analysis of 20 C.F.R. § 404.1527(d), the ALJ must evaluate the following: (1) examining relationship, (2) treatment relationship, including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s), (3) supportability, (4) consistency, (5) specialization, and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d); *see also* 20 C.F.R. § 416.927(d); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

*Newton*, however, only applies in limited circumstances. An ALJ must perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(d) only if there is no other reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F. 3d at 455-57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" or in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see also Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507-11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

In the instant case, the ALJ did not exclusively rely on the testimony of the ME, but rather analyzed the entire record, which included "competing first-hand evidence" that Claimant could, in fact, perform a limited range of light work activity. (Tr. 23-31.) Thus, it was not necessary for him to perform the analysis set forth in 20 C.F.R. § 404.1527(d). *Newton*, 209 F.3d at 458. The ALJ specified that he declined to give controlling weight to Teal's opinion because there was a lack of corroboration from the objective data and because there were inconsistencies and conflicts between the objective data and Teal's opinion. (Tr. 31.)

An ALJ is free to reject all or portions of a physician's opinion when the overall evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citations omitted). In this case, the ALJ noted that the medical reports in the record showed that Claimant had experienced improvement in his spinal condition with treatment, and that he had responded well to pain management treatment. (Tr. 31; 191-196 (Medical Records of Dr. David B. Graybill); 268-72; 313-17 (Medical Records of Dr. Christopher Pratt; 220 (Medical Records of Dr. Carlos M. Kier; 297-304 (Medical Records of Dr. Patrick K. Stanton; 462-470 (Medical Records of Dr. Harry F. Klinefelter III).) The ALJ considered the competing first-hand medical evidence of record and declined to give great weight to Teal's opinion in light of the lack of support from the objective data and the conflicting evidence from other treating physicians.

The ALJ also applied the proper standards in evaluating Yeoman's opinion. (Tr. 31; *cf.* Pl. Br. at 17.) The ALJ found it significant that Yeoman was not a specialist. (*Id.*) Moreover, an examination of the record reflects that Yeoman had little direct participation in Claimant's spinal condition treatment other than referrals, as opposed to the other physicians of record who worked closely with Claimant in developing treatment plans. (*See, e.g.*, Tr. 191-198, 205-17,

230-41, 261-72, 295-304, 310-317, 322-30, 375-77.) There is substantial evidence to support the ALJ's evaluations of the relevant medical opinions in accordance with the law, and the Court finds that the ALJ conducted his evaluation in accordance with the law.

2. **Whether the ALJ properly considered the mental effects of Claimant's pain, his mental impairments, and the side effects of his medications in determining his RFC.**

Next, Plaintiff claims that the ALJ failed to properly consider the mental effects of Claimant's pain, his mental impairments, and the side effects of his medications in determining his RFC. (Pl. Br. at 2.) "[A]n individual's combined impairments can prohibit substantial gainful activity." *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). When determining whether a claimant's physical or mental impairments are of a sufficient medical severity that such impairments could be the basis of eligibility for disability benefits, the ALJ is required to consider the combined effect of all of the claimant's impairments without regard to whether any of such impairments, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). An ALJ may discuss each impairment individually and then state that he considered the combined effect of the impairments to satisfy this mandate, so long as the ALJ's RFC assessment considers all of the claimant's impairments and the assessment is supported by substantial evidence. *See, e.g., Owens*, 770 F.2d at 1282.[2]

---

[2] In *Owens*, the claimant suffered from a back injury, heart condition, high blood pressure, severe pain in his lower back, shortness of breath, and fatigue. *Owens*, 770 F.3d at 1278-79. The ALJ found that Owens had the RFC to perform light work and was not disabled as he could perform his past relevant work. The claimant argued, *inter alia*, that the ALJ failed to consider the combined effects of his impairments because the ALJ evaluated each impairment individually. *Id.* at 1282. The Fifth Circuit disagreed, noting that the ALJ, in his decision, stated, "[C]laimant's impairments, taken singly or *in combination*, do not meet or equal an impairment as defined in the Listing of Impairments." *Owens*, 770 F.2d at 1282 (emphasis in original). The Fifth Circuit held that the ALJ's statement was not a "rote statement" because there was substantial evidence to support the ALJ's disability determination.

11

RFC is what an individual can still do despite his limitations.[3] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id*. *See Myers v. Apfel*, 23 8F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *Id*. RFC is not the least an individual can do, but the most. SSR 96-8p, 1996 WL 374184, at *2. The RFC assessment is a function-by-function assessment, with both exertional and nonexertional[4] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id*. at *3-5. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8 p. 1996 WL 374184 at *7.

The ALJ found that Claimant's depression was a severe impairment, and the record reflects that the ALJ properly considered the possible effect of that impairment on Claimant's ability to work. (Tr. 23, 26, 30.) The ALJ considered all of the relevant evidence and determined that, in light of Claimant's lack of mental health treatment until December 2008, and his positive response to treatment, the limitations caused by his depression, in combination with

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id*.

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id*. Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. SSR 96-8p, 1996 WL 374184, at *6.

his other impairments, were mild restriction in activities of daily living, mild difficulties in social functioning, and mild difficulty with concentration. (Tr. 25, 30.)

Plaintiff also claims that the ALJ failed to properly consider the side effects of Claimant's medication, which Claimant said made his brain "fuzzy" and made him drowsy. (Tr. 30.) The ALJ gave credence to the ME's contradicting testimony, in which he indicated that although drowsiness could cause someone to be less alert, decreased mental acuity was not, in fact, a known side effect of Claimant's medication. (Tr. 63.) The Court concludes that the ALJ properly considered all of the relevant evidence pertaining to the side effects of Claimant's medication and found that there was no side effect which would preclude him from doing his past relevant work as a manufacturing engineer.

### 3. Whether the ALJ Properly Evaluated Claimant's Subjective Complaints.

Finally, Plaintiff claims that the ALJ improperly evaluated Claimant's subjective complaints. (Pl. Br. at 18-22.) In his decision, the ALJ stated that he found that although Claimant's medically determinable impairments could reasonably be expected to cause some of Claimant's alleged symptoms, he did not find Claimant's subjective complaints to be credible to the extent that they conflicted with the ALJ's RFC assessment. (Tr. 30.) Specifically, the ALJ did not find credible Claimant's statements concerning "the intensity, persistence and limiting effects of [the] symptoms." (*Id.*) He provided detailed reasons for his findings, noting that the degree of pain Claimant said he felt in his knee were not supported by the imaging studies. (*Id.*) Likewise, the ALJ addressed Claimant's statements regarding his depression, and noted that Claimant's severe work-related depression was "short-lived," and that he was currently under specialized care,

rather than simply taking an anti-depressant prescribed by his family physician. (*Id.*) Finally, the ALJ also noted the fact that Claimant and his wife were currently operating an infant day care from their home. (*Id.*)

In addition to the aforementioned evidence, the ALJ also incorrectly noted that although Claimant said he could not sit for more than 30 minutes at a time, he did not stand until more than an hour into his hearing before the ALJ. (*Id.*) The Commissioner has conceded that this was not a proper basis upon which to discredit Claimant's subjective testimony, as Claimant asked twice during the hearing if he could stand. (Pl. Br. at 20; Def. Br. at 20; Tr. 40, 53.) But this was certainly not the only reason for his credibility determination. In assessing claimant's credibility, the ALJ considered multiple factors, including: (1) Claimant's history of medical treatment; (2) objective medical findings in the record; (3) Claimant's own reported daily activities of living; (4) the effectiveness of treatment and medication, (5) the side effects of Claimant's medications, and (6) the medical opinions of record, before determining that Claimant's subjective complaints were not consistent with the overall evidence of record. (Tr. 24-30.) An ALJ is not required to give subjective evidence precedence over medical evidence. *Villa*, 895 F.2d at 1024; *Hollis*, 837 F.2d at 1385. The Court finds that the ALJ considered Claimant's credibility in accordance with the law.

### B. Whether the ALJ erred in his step four determination that Claimant was capable of performing his past relevant work.

Plaintiff's final claim is that the ALJ's finding at step four that Claimant was capable of performing his past relevant work as a manufacturing engineer is not supported by substantial evidence because the job is precluded by Claimant's RFC. (Pl. Br. at 22-23; Tr. 31.) Contrary to

Plaintiff's assertion, however, the ALJ properly relied on the testimony of the vocational expert ("VE"). (Tr. 64-65.) According to Plaintiff, the VE "back-tracked" on her response to the ALJ's hypothetical. (Pl. Br. at 22-23.) But this is not the case. Although the VE stated that most engineering positions require a bachelor's degree (Tr. 64), she noted that Claimant was obviously skilled at the job because he had worked as a manufacturing engineer. (*Id.*) She further stated that the fact that Claimant had begun work as an electronic technician and was eventually promoted to manufacturing engineer validated her response, as did the two years of college Claimant completed and his training in the Army as a radar technician. (Tr. 64-66.) The VE clarified that she would not use the sedentary position of director of research and development. (Tr. 66.)

Plaintiff also claims that Claimant's past relevant work required performance of duties well beyond those specified in the hypothetical the ALJ presented to the VE, but the VE, an expert, specifically testified that a hypothetical individual with Claimant's age, education and RFC could perform Claimant's past relevant work as a manufacturing engineer. (Tr. 64-65.) The Court finds that the ALJ's step four finding that Claimant was capable of performing his past relevant work as a manufacturing engineer is supported by substantial evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (holding that VE testimony provided substantial support for ALJ's finding that claimant could perform both sedentary and light jobs). Thus, the Court finds that the ALJ did not err in his step four determination that Claimant was capable of performing his past relevant work as a manufacturing engineer.

In sum, the Court finds that the ALJ complied with the relevant legal standards and that substantial evidence supports his determination that Claimant was not disabled during the

relevant time period. An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence also supports the conclusion that was reached by the ALJ. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); *Dollins v. Astrue*, No. 4:08-CV-503-A, 2009 WL 1542466, *5 (N.D. Tex. June 2, 2009). Because substantial evidence supports the ALJ's disability determination and such determination has not been shown to be a product of legal error, remand is not required. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected).

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

## **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error

or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **August 18, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED: August 4, 2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/cak